IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-02863-RBJ

WENSLEYDALE WAY, INC., a New Jersey Corporation and
ANRA TRUCKING INCORPORATED, a New York Corporation,

    Plaintiffs,

v.

FLEET CAR LEASE INC, a Utah corporation registered to do business in Colorado d/b/a
Fleet Car Carrier,

    Defendant.

**ORDER ON MOTION TO DISMISS**

This matter is before the Court on defendant Fleet Car Lease's ("Fleet Car") motion to dismiss [ECF No. 26] plaintiffs' first amended complaint [ECF No. 24]. For the reasons stated below, the motion to dismiss is DENIED.

**I. BACKGROUND**

Fleet Car is an "authorized motor carrier" that provides transportation of property in interstate commerce. Amended Complaint, ECF No. 24 at ¶24. Fleet Car doesn't use its own drivers or equipment to transport property. *Id.* Instead, Fleet Car enters into leases with independent owner-operators to drive their own trucks to transport Fleet Car's property. *Id.* These owner-operators are basically independent contractors. ECF No. 27 at 1. Plaintiffs Wensleydale and Anra are such lessors of trucks and driving services which Fleet Car uses to transport motor vehicles to retail destinations. ECF No. 24 at ¶24; ECF No. 26 at 2. Although it

appears that Wensleydale and Anra are wholly independent of each other, their claims and leases with defendant are substantially similar in all respects. *See* ECF No. 24 at ¶¶12–13.

As an authorized motor carrier, federal leasing regulations require that Fleet Car enter into written leases with owner-operators called authorized carrier leases ("ACLs").[1] 49 C.F.R. § 376.11(a). Section § 376.12 governs the requirements of that lease; it requires that the ACLs contain, among other requirements, specific disclosures such as the amount of compensation owed for the services provided and any deductions that might be taken from the owner-operators' compensation. In this case, Fleet Car entered into seven ACLs with Wensleydale and three with Anra. ECF No. 24 at ¶¶10–11.

Plaintiffs allege that Fleet Car has a "pattern and practice of conduct" of violating the leasing requirements found in § 376.12. ECF No. 24 at ¶2. Specifically, in their first five claims for relief, plaintiffs assert that Fleet Car violated five separate subsections of § 376.12:

- failure to provide rated freight bill on request (§ 376.12(g));
- unlawful reduction of compensation (§ 376.12(d), (g));
- failure to provide compensation within payment period (§ 376.12(f));
- failure to provide insurance and chargeback information (§ 376.12(j)(2)); and
- failure to provide information regarding deduction for property damages (§ 376.12(j)(3)).

*See id.* at ¶¶19–50.

Plaintiffs filed this lawsuit on November 29, 2017. Complaint, ECF No. 1. In their amended complaint, plaintiffs assert ten claims. ECF No. 24. As I highlighted above, the first

---

[1] These federal leasing regulations are known as the "Truth in Leasing" regulations. The parties agree that the federal leasing regulations do not specifically provide for a private right of action. However, 49 U.S.C. § 14704(a)(2) does.

five claims allege violations of federal leasing regulations. The remaining claims involve breach of contract claims arising under Colorado law. These claims include the following:

- breach of contract for failure to pay compensation to contractor;
- breach of contract for unauthorized and illegitimate chargeback items;
- breach of contract for unauthorized deductions from compensation;
- breach of contract for overcharges for insurance contracts and insurance claims; and
- breach of implied obligation of good faith and fair dealing.

*Id.* at ¶¶51–67.

Defendant filed a partial motion to dismiss arguing that the applicable statute of limitations precluded some of plaintiffs' federal and state claims. ECF No. 26 at 1. Plaintiffs responded by arguing that the date of accrual is a factual dispute for the fact-finder, and at any rate, equitable tolling saves their claims. ECF No. 27. The motion became ripe upon receiving defendant's reply brief. ECF No. 28.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief

3

is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. ANALYSIS

Defendant's motion to dismiss rests solely on statute of limitations grounds. ECF No. 26 at 5. For claims alleged under the federal leasing regulations, the parties agree that the applicable statute of limitations is four years.[2] ECF No. 26 at 5; ECF No. 27 at 3. For the state law claims, however, the parties disagree on the applicable statute of limitations. ECF No. 26 at 6; ECF No. 27 at 5. Defendant argues that the basic statute of limitations for all contract actions under Colorado law is three years and should apply to this case. Plaintiffs disagree and argue that the debt they are seeking to collect is a liquidated or determinable amount and thus subject to a six-year limitation. I address each argument in turn.

**A. Federal Leasing Regulations.**

Plaintiffs filed this lawsuit on November 29, 2017. ECF No. 1. Thus, barring a successful tolling defense, any claim that accrued prior to November 29, 2013 must be dismissed. In the motion to dismiss, defendant fails to explain exactly when the claims accrued. Rather, the motion simply states that both plaintiffs "entered into ACLs prior to [November 29, 2013]," and "[w]hile Plaintiffs still fail to specify when they sustained damages as [a] result of the violations they have alleged, any such claims accruing prior to 29 November 2013 are time-barred." ECF No. 26 at 6. It isn't until its reply brief that defendant, without any citations, states that plaintiffs' federal claims accrued on the date that plaintiffs signed each ACL. ECF No. 28 at 3.

---

[2] 49 U.S.C. § 14704(a)(2) does not specify a statute of limitations. Therefore, the default four-year statute of limitations found in 28 U.S.C. § 1658(a) applies. *See Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1327 (11th Cir. 2010).

The effective dates of Wensleydale's seven ACLs are as follows: (1) July 13, 2009; (2) July 13, 2009; (3) July 30, 2010; (4) October 1, 2013; (5) May 6, 2014; (6) September 23, 2014; and (7) March 27, 2015. *See* Exhibits 1–7, ECF No. 24 at 17–176; *see also* ECF No. 26 at 2 (listing the ACL effective dates in table format). The effective dates of Anra's three ACLs are as follows: (1) April 3, 2012; (2) May 9, 2014; and (3) February 29, 2015. *See* Exhibits 8–10, ECF No. 24 at 177–248; *see also* ECF No. 26 at 2–3. If defendant's theory of accrual is correct, any claims derived from Wensleydale's first four ACLs and from Anra's first ACL would be time-barred.

In response to defendant's motion, plaintiffs disagree that the date of accrual is a fixed date. ECF No. 27 at 5. Instead, plaintiffs argue that it is a question of fact as to when they discovered the alleged violations, and that the facts show that they became aware of the violations no earlier than 2015 and more likely in 2016 or 2017. *Id.*

Whether a statute of limitations bars a claim is typically a question of fact for the jury. *See Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985). However, "when the dates given in the complaint make clear that the right sued upon has been extinguished," a statute of limitations defense may be resolved by the court on a Rule 12(b)(6) motion. *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). In this case, the amended complaint does not make clear that Wensleydale's first four ACLs and Anra's first ACL are untimely simply because they were signed by plaintiffs prior to November 29, 2013. I reach my conclusion for three reasons.

First, as I already mentioned, defendant did not cite any law for the assertion that plaintiffs' claims accrued when plaintiffs signed their ACLs. Defendant does cite two cases which suggest that plaintiffs cannot argue for tolling based on the "discovery rule." ECF No. 28

5

at 3. However, I either find these cases unpersuasive, or I disagree with defendant's reading of them. For an example of the latter, defendant cites a district court case for the proposition that "the date of the execution of a lease is the date on which the [Interstate Commerce Commission Termination Act] claims [under 49 U.S.C. § 14704] accrued for that plaintiff." *Id.* (quoting *Howell v. Bridge Terminal Transp.*, 2009 WL 10699684, at *4–5 (N.D. Ga. Sept. 29, 2009)). However, this court's holding—in which it found that the date of signing of the lease was the date the claim accrued—was merely an application of the rule the court reached. It was not the rule that the court announced, and the assertion that the *Howell* court concluded that the discovery rule did not apply to § 14704 is simply wrong. In fact, the court reached the opposite conclusion. The court stated,

> [d]efendant argues that this Court should apply the general rule applicable to federal statutes of limitation: a limitation period begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. *See, e.g.*, *N.L.R.B. v. Don Burgess Constr. Corp.*, 596 F.2d 378, 382 (9th Cir. 1979). The Court agrees.

Howell, 2009 WL 10699684, at *4. Defendant's "discovery rule" argument is unpersuasive.

Second, page two of each ACL explains the duration of the agreement between the parties. The agreements state that the ACLs terminate one year from the date of signing, but "[a]fter the Initial term, this Agreement shall continue in effect thereafter on a thirty (30)-day period-to-period basis, except as hereinafter provided." *See* Exhibits 1–10, ECF No. 24 at 16–248. This language makes clear that the ACLs could continue for many years. It would seem arbitrary to cut off the federal protections owed to owner-operators four years after the date of signing when violations could occur many years later. It seems more logical that the statute of limitations should run from the date the lessor knew or should have known of the suspected violations.

The third reason that this issue is not resolvable on Rule 12(b)(6) grounds is that I cannot determine exactly when the parties terminated each ACL. The amended complaint states that defendant "formally terminated the last [Wensleydale] leases in writing on or about 16 January 2016." *Id.* at ¶10. Concerning Anra's ACLs, the amended complaint simply states, "[Anra] last worked for Fleet in April of 2016." *Id.* at ¶10. In equally unhelpful language, defendant stated in its motion that "Fleet-Car terminated *all of its* ACLs with Wensleydale on 16 January 2016. Anra ceased providing its equipment and services to Fleet-Car in April of 2016." ECF No. 26 at 2 (emphasis added). For these three reasons, I am unable to determine the date of accrual as a matter of law. As such, defendant's statute of limitations argument must fail. This is a factual issue for the jury to decide.

Even if I could determine the date of accrual, plaintiff presents a valid defense at this stage in the litigation: the doctrine of equitable tolling. Plaintiffs point to their amended complaint in which they assert that defendant concealed information from plaintiffs that would have allowed them to uncover violations. ECF No. 27 at 3 (citing ECF No. 24 at ¶25). Plaintiffs allege that when they asked defendant "too many questions" regarding their detailed pay stubs, "their contracts were terminated." *Id.* at 4. To this day, plaintiffs contend that they have yet to be provided information regarding the true value of each load they transported. *Id.*

The doctrine of equitable tolling doctrine allows plaintiffs to sue "after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Heil v. Wells Fargo Bank, N.A.*, 298 F. App'x 703, 706–07 (10th Cir. 2008) (internal citations and quotation marks omitted) (unpublished). Like the basic rule regarding statute of limitations, "[w]hether a statute of limitations should be equitably tolled is a question of fact . . . ." *Fogle v. Slack*, 419 F. App'x 860, 865 (10th Cir. 2011) (unpublished). However, equitable tolling is only

7

available to plaintiffs who diligently pursue their claims and can show that the failure to timely file was caused by "extraordinary circumstances" beyond their control. *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) (habeas corpus action).

Here, plaintiffs were to receive 85% of the adjusted gross revenue that defendant earned from its customers. Exhibit 1, ECF No. 24 at 20. However, after plaintiffs suspected that defendant regularly underpaid them for their services, plaintiffs allege that they took reasonable steps with their superiors to ascertain clarity of the amounts defendant owed plaintiffs. ECF No. 24 at ¶¶27–28; ECF No. 27 at 6. Plaintiffs assert that they were diligent in requesting this pay information, but allege that defendant blocked their requests and ultimately terminated their contracts. ECF No. 27 at 4. According to plaintiffs, this was part of a "company-wide policy to refuse or ignore requests for information" that would enable them to determine whether they were properly compensated. ECF No. 24 at ¶25. Because of defendant's active concealment of wrongful behavior, plaintiffs believe the statute of limitations should be tolled until they discovered defendant's conduct no earlier than 2015, well within the four-year statute of limitations.

At this early stage, I am unpersuaded by defendant's argument that plaintiffs have not met their burden by showing "extraordinary circumstances" prevented them from timely filing this lawsuit. Plaintiffs have pled plausible facts to show that they diligently pursued their rights under the ACLs but were prevented from discovering defendant's wrongful conduct due to defendant's own actions. As such, even if I could determine the date of accrual from the amended complaint or the motion, plaintiffs have adequately pled the defense of equitable tolling and thus defendant's motion must be denied.

### B. State Law Claims.

Defendant next argues that plaintiffs' state law claims are subject to the three-year statute of limitations found in Colo. Rev. Stat. § 13-80-101(1)(a). ECF No. 26 at 6. Thus, defendant asserts that any claim that accrued before November 29, 2014 is untimely. Section 13-80-101(1)(a) provides: "(1) The following civil actions . . . shall be commenced within three years after the cause of action accrues, and not thereafter: (a) All contract actions, including personal contracts and actions under the 'Uniform Commercial Code', except as otherwise provided in section 13-80-103.5." In response, plaintiffs argue that their claims are subject to that very exception referenced in § 13-80-101(1)(a), which carries a six-year statute of limitations. ECF No. 27 at 5. Section 13-80-103.5(1)(a) reads: "(1) The following actions shall be commenced within six years after the cause of action accrues and not thereafter: (a) All actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action . . . ." As such, the issue for plaintiffs' state law claims turns on whether the amount owed to them is "liquidated" or "determinable."

Under Colorado law, "an amount is either liquidated or determinable for purposes of § 13-80-103.5(1)(a) if an agreement sets forth a method for determining the amount due, regardless of the need to refer to facts external to the agreement." *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000). Additionally, "[a] debt is 'liquidated' if the amount due 'is capable of ascertainment by reference to an agreement or by simple computation.'" *Portercare Adventist Health Sys. v. Lego*, 286 P.3d 525, 528 (Colo. 2012) (quoting *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo. App. 1995)). One situation where an amount is sufficiently definite and therefore determinable is "where the contract fixes a price per unit of performance, even though the number of units performed must be proved and is subject to

dispute." *Rotenberg*, 899 P.2d at 368 (quoting Restatement (Second) of Contracts § 354, comment c).

In its motion to dismiss, defendant argues that the damages that plaintiffs seek "are not 'liquidated' because the ACLs do not contain liquidated damages in favor of Plaintiffs." ECF No. 26 at 6 n.3. This is because the compensation owed to plaintiffs was not based on "a price per unit of performance" but rather a formula based on the revenue received from defendant's customers. *Id.* Defendant alleges that this formula is not easily calculable due to the variable factors required to calculate plaintiffs' compensation. *Id.* Plaintiffs respond by arguing that the plain language of the ACLs required defendant to pay plaintiffs 85% of the adjusted gross revenue that defendant received from its customers for each shipment transported. ECF No. 27 at 6. That provision, according to plaintiffs, fixes a price per unit of performance, which makes the debt definite and determinable. *Id.*

I agree with plaintiffs. Like in *Interbank Invs.*, "the method for determining the amount due to the plaintiff was set forth in the agreements." *Interbank Invs.*, 12 P.3d at 1230. In this case, paragraph six of each ACL provides:

> <u>Compensation to Contractor</u>. Subject to any modifications, amendments, or adjustments as contemplated below, the compensation to be paid by Carrier to Contractor for use of the Equipment and the services of Contractor's driver(s) shall be equal to **eighty-five** percent (**85%**) of the adjusted gross revenue actually received by Carrier for the transportation of each shipment Contractor transports. Adjusted gross revenue is defined as all revenue received by Carrier from its customers for cargo hauled by Contractor, reduced by any brokerage fees owed by Carrier to a third party, storage or warehouse charges incurred with respect to the cargo handled by Contractor, and all other amounts received by Carrier from its customers not related to the actual transportation of the cargo by Contractor. In order to verify the compensation paid by Carrier to Contractor on account of a shipment, Carrier agrees, to provide Contractor, before or at the time of settlement, a copy of the rated freight bill or similar document containing the same information.

Ex. 1, ECF No. 27 at 20 (emphasis in original). Although there are multiple factors that impact the adjusted gross revenue, the ACLs provide directions for determining that amount.

My decision is in accord with other Colorado appellate court decisions. In *Rotenberg v. Richards*, the court decided whether a debt owed under a legal retainer agreement was subject to § 13-80-103.5(1)(a). 899 P.2d 365, 368 (Colo. App. 1995). The retainer agreement in question required the client to pay the attorney $100 per hour. *Id.* The court held that the debt was determinable even though the plaintiff needed extrinsic evidence to establish the number of hours worked. *Id.* Next, in *Comfort Homes, Inc. v. Peterson*, the court considered whether a debt owed under a building contract was subject to the statute despite the amount owed being a percentage of the estimated cost of construction. 549 P.2d 1087, 1089–90. The court held that the debt was determinable even though the parties disputed the estimated cost of construction. *Id.* at 1090.

Along these same lines I find that the ACLs provide sufficient guidance to ascertain a definite amount. Defendant should have a firm accounting of the brokerage fees, storage or warehouse charges, and any other charges to determine its adjusted gross revenue. Once defendant determined the adjusted gross revenue, plaintiffs were to receive 85%. That makes the amount owned determinable and thus subject to the longer statute of limitations.

Despite having decided that plaintiffs' state law claims are subject to the six-year statute of limitations found in § 13-80-103.5(1)(a), defendant still argues that any claims arising from the first three ACLs are untimely because they were entered into prior to November 29, 2011. ECF No. 26 at 6–7 n.3. Like I noted above in the previous section, "[w]hether a statute of limitations bars a particular claim is a question of fact." *Trigg v. State Farm Mut. Auto. Ins.*, 129 P.3d 1099, 1101 (Colo. App. 2005). "However, if undisputed facts demonstrate that the

plaintiff had the requisite information as of a particular date, then the issue of whether the statute of limitations bars a particular claim may be decided as a matter of law." *Id.*

Here, my analysis leads me to the same conclusion as the federal claims. Reading the allegations in the complaint in light most favorable to the plaintiffs, it seems plain to me that there are fact disputes as to when plaintiffs knew or should have known about defendant's alleged wrongful conduct. Plaintiffs first sought the information to help them uncover defendant's alleged wrongdoing in 2015, 2016, and 2017, well after 2011. It is for the jury to decide whether plaintiffs knew or should have known of the alleged wrongdoing in early 2011, and whether that time should be tolled. Plaintiffs have met their burden under Rule 12(b)(6).

## ORDER

For the reasons above, the motion to dismiss [ECF No. 26] is DENIED.

DATED this 23rd day of January, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge